[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on November 11, 1971 in New Haven, Connecticut. There were four children born to the parties during the marriage, and at the time of trial two of those children had not yet attained their majority. CT Page 12094
While Mrs. Bush, the plaintiff, is a high school graduate, Mr. Bush has been graduated from college and has been employed for the past several years by Springfield College as a professor and, since early 1995, as academic coordinator in the School of Human Services. Neither party testified to health problems of any significance.
Mrs. Bush was recently employed by Yale-New Haven Hospital on a part-time basis, and she reported a gross weekly income of $136 on her financial affidavit of April 25, 1995. As recently as 1992, however, Mrs. Bush was employed on a full-time basis, earning approximately $19,000 a year at a local bank. An annual salary of $19,000 would yield $346 in gross weekly income. In addition, the two minor children have reached their mid-teens, thereby freeing Mrs. Bush to return to full-time employment. Based on these circumstances, the court finds that Mrs. Bush has an earning capacity of $19,000 a year for full-time employment, and the court's financial orders will be based, in part, on that finding.
Even recognizing Mrs. Bush's earning capacity, there remains a significant disparity in the parties' present and prospective incomes. Between his full-time employment at Springfield College and his position as a part-time lecturer at Southern Connecticut State University, Mr. Bush's approximate annual gross income is $59,000. At that figure, Mr. Bush would enjoy a gross weekly income of $1,135. It is unlikely that Mrs. Bush will ever be able to approach Mr. Bush's earning capacity, and the court's financial orders will also be based on these findings.
The only significant asset of the parties is the family home at 165 Plymouth Street, New Haven. The house was purchased as the family home in 1979. The court finds that the family home has a fair market value of $85,000, and that there is an outstanding first mortgage on the home with a principal balance of $59,082. While this matter was pending, the mortgagee, Centerbank Mortgage Company, brought an action seeking to foreclose the mortgage for nonpayment of the underlying note.
In addition to the mortgage on the family home, the parties testified about several other liabilities for unpaid taxes, a sewer assessment and medical bills totalling approximately $12,000. CT Page 12095
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
This is a marriage of almost 24 years. Mrs. Bush not only had the principal responsibility for child care and home upkeep during the marriage, but she also worked for a considerable period of time, thereby contributing to the financial assets of the family. Although she left work a few years ago, she has an established earning capacity and testified that she intended to return to work full-time after the dissolution. Nevertheless, she will never match Mr. Bush's earning capacity, nor will she develop a fund to secure her financial interests at the time of her retirement.
The court's orders will be intended principally to equalize, at least to some degree, the financial conditions of the parties. The court's orders will also take into account, as permitted by statute, the causes of the dissolution. Based on the testimony heard at trial, it appears to the court that the principal cause was Mr. Bush's maintenance of separate living quarters on the third floor of the family home during the entire time that his wife and children occupied the first two floors. While he testified that Mrs. Bush acquiesced in this peculiar arrangement, she denied it, and the court found her credible on this point. The court would be willing to believe that there were reasons why Mr. Bush initially established a separate living arrangement for himself in the family home, but no such reasons appeared in the testimony. Such an arrangement could only have led to an increasing estrangement between the parties, which contributed to the breakdown of the marriage. CT Page 12096
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
 1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown.
 2. The plaintiff shall have sole legal and physical custody of the two minor children; viz., Shomari Bush and Bokari Bush, and the defendant shall have reasonable and liberal rights of visitation. The plaintiff may not remove the residence of the minor children from the Judicial District of New Haven without giving the defendant at least 90 days written notice of such intent. The parties shall confer on all important matters pertaining to the children's health, education, welfare and upbringing. In the event such consultation does not result in agreement, the final decision-making authority on these matters will be with the plaintiff.
 3. The defendant shall pay to the plaintiff $246 weekly as child support for the two minor children, pursuant to the child support guidelines and taking into consideration the court's findings as to the earning capacity of the plaintiff and the present income of the defendant. When the older of the two minor children shall attain his majority, the defendant shall pay $170 weekly as child support for the remaining minor child.
 4. The defendant shall also pay to the plaintiff $75 per week as alimony until the older of the two minor children attains his majority. Thereafter, he shall pay $200 per week as alimony. The payments of child support pursuant to paragraph 3 and alimony shall be by immediate wage execution. Alimony shall cease upon the death or remarriage of the plaintiff or its termination by the court pursuant to § 46b-86(b) of the General Statutes. The defendant shall maintain his present life insurance through his employer and name CT Page 12097 the plaintiff as the irrevocable beneficiary for as long as alimony may be payable hereunder.
 5. Pursuant to § 47-14g of the General Statutes, after the date of dissolution the parties shall own the premises at 165 Plymouth Street, New Haven, Connecticut, as tenants in common. Pursuant to § 46b-81(a) of the General Statutes, the court transfers 25% of the defendant's share in the ownership of that property to the plaintiff so that the parties shall own the premises as tenants in common with 75% of the ownership in the plaintiff and 25% in the defendant. Within 30 days of the date of dissolution the plaintiff shall file a certified copy of the decree or an abstract thereof in the land records of the City of New Haven.
 6. The premises shall be immediately listed for sale with a licensed real estate broker of the parties' choosing and at a price agreed to by the parties. If the parties are unable to agree on either of these matters, they shall return to court for a judicial determination. Upon the sale of the property and after payment of the usual costs of sale and any then-existing liens on the property, the parties shall share the proceeds, with 75% going to the plaintiff and 25% to the defendant.
 7. The plaintiff shall occupy the premises prior to its sale and be fully responsible for all costs attributable to the property, including the first mortgage, real estate taxes and homeowner's insurance. She shall also be responsible for all ordinary repairs, and the parties shall share the cost of extraordinary repairs on a 75/25 basis. Extraordinary repairs are defined as any repairs with a total cost exceeding $500. The parties shall agree on the necessity of any such extraordinary repairs. If the plaintiff has such repairs made without the defendant's agreement, she shall be responsible for the entire cost thereof. The defendant shall not unreasonably withhold his agreement. The plaintiff shall hold the defendant harmless for all of the costs attributable to the marital residence listed in this paragraph for which she is responsible. CT Page 12098
 8. The defendant shall maintain medical and dental insurance for the minor children for as long as is permitted under the policy provided to him through his employment, including periods of their enrollment in post-high school education. He shall also be responsible for the entire cost of any unreimbursed or uninsured medical expenses of the minor children. The defendant shall maintain medical and dental insurance for the plaintiff for the period permitted by his employer and shall assist her in obtaining COBRA coverage thereafter. The defendant shall have no responsibility for the unreimbursed or uninsured medical or dental expenses of the plaintiff.
 9. The defendant may claim the dependency tax exemption for both of the minor children.
 10. The defendant shall be responsible for the student loan appearing on his financial affidavit of March 30, 1995 and shall hold the plaintiff harmless thereon. The defendant shall pay the outstanding sewer bill and shall be reimbursed for half of that payment out of the proceeds of the sale of the family home over and above his 25% share of the net proceeds.
 11. The parties shall be equally responsible for the debt to the City of New Haven for motor vehicle tax, State of Connecticut for income taxes and Yale-New Haven Hospital and Yale School of Medicine for care furnished to the minor child of the parties. Each party shall indemnify and save the other party harmless for his or her 50% share of these expenses.
 12. At the time of trial the defendant had not fully satisfied a court order of March 8, 1995 for unpaid pendente lite household support. The amount outstanding at the time of trial was $2,700. The defendant shall satisfy that amount by immediately transferring to the plaintiff an income tax refund check which was expected at the time of trial, if that check has not already been received, in the amount necessary to satisfy the $2,700 outstanding. Within 30 days of the date of dissolution, the defendant shall pay any balance due which has not already been satisfied by CT Page 12099 means of the income tax refund or other payments.
 13. The defendant shall immediately transfer all his right, title and interest in the 1990 Nissan AX vehicle to the plaintiff. The plaintiff shall immediately return to the defendant his cap and gown from graduation, and a computer, printer, VCR and Toshiba television which were left at the family home by the defendant when he vacated the premises and which were claimed to have been taken in a suspicious burglary. In lieu of the immediate return of the computer, printer, VCR and Toshiba television, the plaintiff may pay the defendant $1,500 within 30 days.
 14. Pursuant to a Qualified Domestic Relations Order the defendant shall assign to the plaintiff 50% of his interest in any pension funds through Springfield College or any other source within 60 days of the date of dissolution. The value of the pension fund(s) as of September 30, 1995 will form the basis for distribution. The defendant shall cooperate fully in the execution of all necessary documents for this purpose. The court retains jurisdiction to resolve any questions and issue any additional orders necessary to implement this order.
 15. The defendant shall pay as counsel fees for the plaintiff the sum of $2,250, including $250 previously ordered by the court. This payment may be made in installments or in a lump sum and shall be made in full by no later than February 15, 1996.
 16. The plaintiff's maiden name is restored, and she may hereafter be known as Acquanetta Tally.
/s/ Shortall, J. SHORTALL